IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JALIK PEAY, | : | Civil No. 3:24-cv-1367 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| JOHN RIVELLO, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Jalik Peay ("Peay"), an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), initiated this civil rights action pursuant to 42 U.S.C. §

1983. (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 14).

The remaining Defendants are Superintendent John Rivello, Deputy Superintendent Jon

Kohler, Major W. House, Deputy Superintendent Jill Spyker, Correctional Officer E. Heaster,

Correctional Officer Mozley, Correctional Officer Tucker, Correctional Officer McCulley,

Correctional Officer Fowler, Correctional Officer Suydam, Correctional Officer J. Watt,

Correctional Officer Hall, Correctional Officer S. Kyle, Hearing Examiner Scott Ellenberger,

and Chief Hearing Examiner Moslak (collectively, the "DOC Defendants").

Presently pending before the Court is a motion (Doc. 21) to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6) filed on behalf of the DOC Defendants. The motion

is ripe for resolution. For the reasons set forth below, the motion will be granted in part and

denied in part.

I.    **Factual Allegations**[1]

The crux of Peay's claim is that Defendants retaliated against him and violated his right to due process.  (Doc. 14).

Peay alleges that, on April 13, 2024, officers searched his cell for contraband and allegedly found nothing.  (*Id.* ¶ 21).  Peay asserts that he was placed in the Restricted Housing Unit ("RHU") for 12 days during an investigation.  (*Id.* ¶ 26; Doc. 24, at 2).  While in the RHU, Peay maintains that he did not receive a confiscated items receipt in relation to the cell search.  (Doc. 14 ¶ 20; Doc. 24, at 2).

Peay next alleges that he was molested by correctional officers on June 5, 2024. (Doc. 14-10; Doc. 24, at 2).  Peay does not identify the correctional officers who allegedly molested him.  (*See generally* Doc. 14).  Peay asserts that he reported this sexual abuse to the Pennsylvania State Police ("PSP") on July 9, 2024.  (Doc. 14 ¶ 24; Doc. 24, at 3).

Two days later, on July 11, 2024, Defendant Watt allegedly issued a retaliatory misconduct against Peay charging him with possession of contraband related to the cell search on April 13, 2024.  (Doc. 14 ¶ 19; Doc. 14-1).  Peay again alleges that he did not receive a confiscated items receipt, in violation of DOC policy.  (Doc. 14 ¶¶ 20, 22).

On July 15, 2024, Peay appeared before Hearing Examiner Ellenberger.  (*Id.* ¶ 23). Defendant Ellenberger found Peay guilty of the misconduct charges and sanctioned him

---

[1]    For purposes of this Memorandum, the Court only includes the allegations pertaining to the DOC Defendants.

with 60 days in disciplinary confinement and no-contact visiting restrictions.  (*Id.* ¶ 26).

Peay appealed this decision to the Program Review Committee ("PRC"), which included

Defendants Kohler and Spyker.  (*Id.* ¶ 27).  On July 30, 2024, the PRC upheld the decision

of Hearing Examiner Ellenberger.  (*Id.* ¶ 28).  Peay alleges that Defendants Kohler and

Spyker were "complicit in the retaliation when they signed off" on Peay's guilty verdict.  (*Id.*

¶ 29).

On August 8, 2024, Peay appealed to Defendant Rivello, who upheld the decision of

Hearing Examiner Ellenberger.  (*Id.* ¶ 36).  Peay alleges that Defendant Rivello was

"complicit in the retaliation when he upheld the findings and sustained the decision of the

hearing examiner."  (*Id.* ¶ 37).

On August 15, 2024, Peay appealed to Defendant Moslak, the Chief Hearing

Examiner.  (*Id.* ¶ 39).  Defendant Moslak denied the appeal and concluded that the Hearing

Examiner's findings were supported by the evidence presented at the hearing.  (*Id.* ¶ 40).

Peay alleges that Defendant Moslak was complicit in the retaliation when he denied his

appeal.  (*Id.*).

Based on these allegations, Peay sets forth the following claims for relief.

Peay alleges that Defendants Watt, Ellenberger, Kohler, Spyker, and Rivello

retaliated against him by imposing no-contact visits and subjecting him to unwarranted

disciplinary time in solitary confinement.  (*Id.* ¶ 45).

Peay further alleges that Defendant Ellenberger disregarded DOC policy, and in doing so violated his Fourteenth Amendment right to due process. (*Id.* ¶¶ 26-27). Finally, he alleges that Defendants Ellenberger, Kohler, Spyker, and Rivello falsified documentation in order to find Peay guilty of the misconduct. (*Id.* ¶ 47).

## II.     Legal Standards

### A.     Federal Rule of Civil Procedure 12(b)(6)

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

"Though a complaint 'does not need detailed factual allegations,…a formulaic recitation of the elements of a cause of action will not do." *DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A.*

*France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] -that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).  This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).  "[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of

time. *Id.*

    B.    <u>Section 1983</u>

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress.

*See* 42 U.S.C. § 1983. Thus, "Section 1983 imposes civil liability upon any person who,

acting under the color of state law, deprives another individual of any rights, privileges, or

immunities secured by the Constitution or laws of the United States." *Shuman v. Penn*

*Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does

not create any new substantive rights but instead provides a remedy for the violation of a

federal constitutional or statutory right." *Id.* (citation omitted).

**III.   Discussion**

    A.    <u>Retaliation Claim</u>

    Peay lodges a retaliation claim against Defendants Watt, Ellenberger, Kohler,

Spyker, Rivello, and Moslak. First, he alleges that Defendant Watt issued a retaliatory

misconduct against him. (Doc. 14 ¶ 19). Second, he alleges that Defendants Watt,

Ellenberger, Kohler, Spyker, and Rivello retaliated against him by imposing no-contact visits

and subjecting him to unwarranted disciplinary time in solitary confinement. (*Id.* ¶ 45). And

third, Peay alleges that Defendants Kohler, Spkyer, Moslak, and Rivello were complicit in the retaliation when they signed off on his guilty verdict at his misconduct hearing. (*Id.* ¶¶ 29, 37, 40).

### 1.     Defendants Watt and Ellenberger

To prevail on his retaliation claim, Peay must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001)).  An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights.  *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link.  *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).  Once a plaintiff has established that he was subjected to a retaliatory disciplinary measure, the burden shifts to the defendants to demonstrate by a preponderance of the evidence that they would have made the same penological decision absent the protected conduct.  *Rauser*, 241 F.3d at 334.  This determination requires the court to "evaluate 'the quantum of evidence'" in support of the misconduct "to determine whether the prison officials' decision

to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them." *Watson*, 834 F.3d at 426.

Peay alleges that, in retaliation for reporting sexual abuse to the PSP on July 9, 2024, Defendants filed a false misconduct against him. (Doc. 14 ¶ 24). Defendants acknowledge that reporting sexual abuse to the PSP is a constitutionally protected activity. (Doc. 22, at 8).

Peay asserts that he suffered adverse action in the form of a false misconduct issued on July 11, 2024. (Doc. 14 ¶ 19). Allegations of being falsely charged with misconduct based on retaliatory motives generally satisfies the requirement that an inmate establish whether the actions purportedly taken in retaliation for this conduct are sufficiently "adverse" to constitute constitutionally cognizable infringements. *See Smith v. Mensinger*, 293 F.3d 641, 653 (2002) (finding that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment).

With respect to the last *Rauser* prong, Peay alleges that his report to the PSP was a substantial or motivating factor in the Defendants' decision to issue him a false misconduct report. (Doc. 14 ¶ 24).

The retaliation claim will proceed as Peay has clearly set forth sufficient allegations to state a retaliation claim against Defendants Watt and Ellenberger.[2]

---

[2] Defendants invoke the same decision defense. (Doc. 22, at 11-13). They argue that they would have taken the same disciplinary action even in the absence of the protected activity, because "it is undisputed that Plaintiff possessed contraband." (*Id.* at 12). A determination regarding this claim goes beyond the pleadings and is not appropriately considered in the context of a Rule 12 motion.

2.    **Defendants Kohler, Spkyer, Moslak, and Rivello**

Defendants next argue that the retaliation claim against Kohler, Spyker, Moslak, and Rivello should be dismissed because Peay does not adequately allege facts to support their personal involvement.  (Doc. 22, at 9-11).

To establish personal liability against a defendant in a section 1983 action, the defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362 (1976).  Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986).  In cases where the defendant is a supervisor and the misconduct is committed by the supervisor defendant's subordinate, it can also be shown through evidence that: (1) the supervisor defendant personally directed their subordinate to engage in the wrongful conduct at issue; or (2) the supervisor defendant had actual knowledge and acquiesced in the wrongful conduct at issue.  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207).  Personal involvement must be pled with appropriate particularity.  *Rode*, 845 F.2d at 1207.

Peay's retaliation claim against Kohler, Spyker, Moslak and Rivello is based on their denials of Peay's appeals of the misconduct report.  (Doc. 14 ¶¶ 29, 37, 40).  Specifically, the second amended complaint alleges that Defendants Kohler and Spyker were "complicit

9

in the retaliation when they signed off" on Peay's guilty verdict (*id.* ¶ 29); Defendant Rivello was "complicit in the retaliation when he upheld the findings and sustained the decision of the hearing examiner" (*id.* ¶ 37); and Defendant Moslak was complicit in the retaliation when he denied his appeal (*id.* ¶ 40). Based on these allegations, it is apparent that Peay is attempting to hold Kohler, Spyker, Moslak, and Rivello liable based on their responses to the appeals of a misconduct charge. This type of averment is insufficient to establish personal involvement in the deprivation of a constitutional right. *See, e.g.*, *Holden v. Wetzel*, 2021 WL 1090638, at *15 (W.D. Pa. Mar. 22, 2021) (citing *Powell v. McKeown*, 2020 WL 4530727, at *10-12 (M.D. Pa. Aug. 6, 2020) (holding that claims against chief hearing examiner based on underlying procedural deficiencies and failure to respond favorably to plaintiff's appeals from disciplinary proceedings were insufficient to for liability under § 1983)); *Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018) (allegation that supervisory defendant was "made aware of several issues of the plaintiff's and…failed to help him" is insufficient to state a claim for relief); *see also Sims v. Wexford Health Sources*, 635 F. App'x 16, 19-20 (3d Cir. 2015) ("If an official's only involvement is the investigation or adjudication of an inmate grievance after the event giving rise to the grievance has happened, that is not considered to be personal involvement.") (citing *Rode*, 845 F.2d at 1208)). Accordingly, the retaliation claim against Kohler, Spyker, Moslak, and Rivello will be dismissed as Peay has not plausibly alleged their personal involvement.

B.    Due Process Claim

Peay alleges that his Fourteenth Amendment rights were violated based on the violation of DOC policy.  (Doc. 1 ¶¶ 26, 41).  He further alleges that Defendants Ellenberger, Kohler, Spyker, and Rivello falsified documentation in order to find Peay guilty of the misconduct.  (*Id.* ¶ 47).

### 1.    Alleged Violation of DOC Policy

Peay alleges that he did not receive a confiscated items receipt, in violation of an internal DOC policy.  (Doc. 14 ¶¶ 20, 22).  However, a violation of prison policy is not equivalent to a constitutional violation.  It is axiomatic that "a prison policy manual does not have the force of law and does not rise to the level of a regulation" and that "a violation of internal policy does not automatically rise to the level of a Constitutional violation.  *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension").  Moreover, Peay acknowledges that "the D.O.C. policies do not apply to this court[,] he only wants to show how the defendant[s] disregarded their own policies to further their retaliation upon the plaintiff."  (Doc. 14 ¶ 35).  Peay's complaint about the alleged violation of DOC policy does not rise to the level of a constitutional violation and will be dismissed.

## 2.    Fabrication of Evidence Claim

Peay brings a claim against Defendants Ellenberger, Kohler, Spyker, and Rivello for falsifying documents in order to find him guilty of the disciplinary infractions that resulted in Peay having to serve 60 days in segregation.  (Doc. 14 ¶ 47).

"[T]he filing of a fraudulent misconduct report and related disciplinary sanctions do not without more violate due process."  *Seville v. Martinez*, 130 F. App'x 549, 551 (3d Cir. 2005) (*per curiam*).  As stated in *Freeman v. Rideout*, 808 F.2d 949 (2d Cir. 1986), a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."  *Id.* at 951. However, the "plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law."  *Id.*  Consequently, "[d]ue process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."  *Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) (*per curiam*); *Smith*, 293 F.3d at 654 ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  The Supreme Court has mandated a two-part analysis of a procedural due process claim: first, "whether the asserted individual interests are encompassed within

the…protection of 'life, liberty or property[,]'" and second, "if protected interests are

implicated, we then must decide what procedures constitute 'due process of law.'"

*Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  If there is no protected liberty or property

interest, it is unnecessary to analyze what procedures were followed when an alleged

deprivation of an interest occurred.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court shifted the focus of

the liberty interest analysis from one "based on the language of a particular regulation" to

"the nature of the deprivation" experienced by the prisoner.  *Id.* at 481.  The Court reasoned

that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected

as part of an inmate's sentence.  *Id.* at 485.  Accordingly, the *Sandin* Court, focusing on the

nature of the punishment instead of on the words of any regulation, held that the procedural

protections in *Wolff v. McDonnell*, 418 U.S. 539 (1974), were inapplicable because the

"discipline in segregated confinement did not present the type of atypical, significant

deprivation in which a state might conceivably create a liberty interest."  *Sandin*, 515 U.S. at

486.  For a prisoner, such a deprivation occurs when the prison "imposes atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at

484.

Thus, to state a plausible claim based on the filing of falsified evidence, Peay must

allege that he was denied an "opportunity to confront and challenge the allegedly perjured

testimony offered in support of the misconduct reports."  *Smith*, 293 F.3d at 654.  Peay does

not allege that he was denied an opportunity to challenge the alleged falsified evidence.

Rather, Peay attended his misconduct hearing and followed all steps through the

misconduct appeal process.  At each level, Peay raised his allegation that documents were

falsified and that his due process rights were violated.  (Doc. 14 ¶¶ 22-23, 26, 27, 36, 39;

Doc. 23, at 4-5; Doc. 24, at 3-4).  Peay also alleges that he fully exhausted his

administrative remedies through the grievance system.  (*Id.* ¶ 44).  It appears that Peay had

the opportunity to challenge and confront the alleged falsified documents, satisfying the

procedural due process requirements.  *See Thomas*, 467 F. App'x at 97.  Further, any

allegation that Defendants Ellenberger, Kohler, Spyker, and Rivello failed to properly

investigate the misconduct, does not form the basis of a due process claim.  *See*

*McCullough v. Miller*, 330 F. App'x 330, 333 (3d Cir. 2009) (finding no due process violation

where inmate alleged the defendants had knowledge of the incident and "exercised

acquiescence" by "approving false misconduct reports, affirming sanctions, or refusing to

investigate the assault").  Accordingly, Peay's due process claim against Defendants

Ellenberger, Kohler, Spyker, and Rivello based on the alleged falsified documents will be

dismissed.

      C.   <u>Lack of Personal Involvement</u>

      As stated, in order to plausibly state a claim under Section 1983, a plaintiff must

allege that each defendant was personally involved in the act or acts that he claims violated

his federally protected rights.  *See Rode*, 845 F.2d at 1207.  "A plaintiff makes sufficient

allegations of a defendant's personal involvement by describing the defendant's

participation in or actual knowledge of and acquiescence in the wrongful conduct."

*Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode*,

845 F.2d at 1207); *Dooley*, 957 F.3d at 374 (stating that "[p]ersonal involvement requires

particular 'allegations of personal direction or of actual knowledge and acquiescence'"

(quoting *Rode*, 845 F.2d at 1207)).  Thus, in pursuing any Section 1983 claim against prison

officials, a plaintiff may not rely solely on respondeat superior, *see id.* (citation omitted),

which is a theory of liability that "arises 'solely on the basis of the existence of an employer-

employee relationship,' regardless of whether the employer had any part in causing harm[,]"

*Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Monell v. Dep't of

Soc. Servs. of New York*, 436 U.S. 658, 692 (1978)).  Allegations that broadly implicate

multiple defendants without delineating individual conduct are legally insufficient.  *See Van

Tassel v. Piccione*, 608 F. App'x 66, 69-70 (3d Cir. 2015).

Peay has named House, Heaster, Mozley, Tucker, McCulley, Fowler, Suydam, Hall,

and Kyle as Defendants in the second amended complaint.  (Doc. 14).  However, there is a

complete absence of factual allegations in the second amended complaint which would

establish how these Defendants were personally involved in a violation of Peay's

constitutional rights.  *See Dooley*, 957 F.3d at 374 (stating that "[p]ersonal involvement

requires particular 'allegations of personal direction or of actual knowledge and

acquiescence'" (quoting *Rode,* 845 F.2d at 1207)); *Thomas v. Tice*, 948 F.3d 133, 138 (3d

Cir. 2020) (explaining that, in order for a plaintiff to prevail under Section 1983, he must make "a showing that each defendant was personally involved in the alleged wrongdoing"). There are simply no factual allegations against Defendants House, Heaster, Mozley, Tucker, McCulley, Fowler, Suydam, Hall, and Kyle in the second amended complaint, which is insufficient to demonstrate their necessary personal involvement in the alleged unconstitutional conduct. *See Chavarriaga*, 806 F.3d at 222 (explaining that the plaintiff's allegations did not describe the defendants' conduct in sufficient detail so as to support the plaintiff's conclusory allegations that the defendants had any personal involvement in any violation of her constitutional rights, as required by Section 1983 (citation omitted)); *see also Iqbal*, 556 U.S. at 678 (stating that legal conclusions are "not entitled to be assumed true" (citation omitted)).

In his opposition brief, Peay argues that "House, Heaster, Mozley, Tucker, McCulley, Fowler, Suydam, Hall, [and] Kyle...are named as defendants in the second [a]mended complaint because they all know of the retaliation due to Mozley, Tucker, McCulley, Fowler, [and] Suydam being the genesis defendants in the original complaint and the retaliation is due to Plaintiff filing paperwork against them and giving a statement to the state police against them." (Doc. 23, at 5). He further states that "he only wished to incorporate all the allegation(s) and exhibit(s) to show the pattern of ill behavior and negligence on behalf of all the defendants." (*Id.*). Peay's opposing argument confirms that he has not set forth any

16

factual allegations against these Defendants in the second amended complaint and seeks to incorporate allegations from his prior complaint. (*Id.*).

"In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). Because the second amended complaint adds new allegations and supersedes the first amended complaint, Peay cannot rely on the allegations set forth in the prior complaint. Accordingly, any Section 1983 claims against Defendants House, Heaster, Mozley, Tucker, McCulley, Fowler, Suydam, Hall, and Kyle are subject to dismissal for Peay's failure to allege their personal involvement. Peay will be granted leave to amend his claims against these Defendants to allege their personal involvement in the retaliation claim arising out of April 2024.

## IV.    **Leave to Amend**

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). The Court finds that the following claims are factually and legally flawed: the retaliation claim against Defendants Kohler, Spyker, Moslak, and Rivello; the claim related to the

violation of DOC policy; and the due process claim against Defendants Ellenberger, Kohler, Spyker, and Rivello. Therefore, the Court concludes that granting Peay leave to file a third amended complaint with respect to these claims would be a futile endeavor.

The Court will grant Peay leave to amend his claims against Defendants House, Heaster, Mozley, Tucker, McCulley, Fowler, Suydam, Hall, and Kyle to allege any personal involvement in the retaliation claim arising out of April 2024.

## V. Conclusion

Consistent with the foregoing, the Rule 12(b)(6) motion (Doc. 21) to dismiss filed on behalf of the DOC Defendants will be granted in part and denied in part. The retaliation claim against Defendants Kohler, Spyker, Moslak, and Rivello will be dismissed. The claim related to the alleged violation of DOC policy will also be dismissed. The Fourteenth Amendment due process claim against Defendants Ellenberger, Kohler, Spyker, and Rivello will be dismissed. Finally, the claims against Defendants House, Heaster, Mozley, Tucker, McCulley, Fowler, Suydam, Hall, and Kyle will be dismissed with leave to amend only to allege their personal involvement in the retaliation claim arising out of April 2024.

The retaliation claim against Defendants Watt and Ellenberger will proceed.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May ___, 2025

18