IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JALIK PEAY, | : | Civil No. 3:24-cv-1367 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| JOHN RIVELLO, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Jalik Peay ("Peay"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 14). The remaining claim is a First Amendment retaliation claim against Correctional Officer J. Watt and Hearing Examiner Scott Ellenberger.

Presently before the Court is a motion for summary judgment by Defendants Watt and Ellenberger. (Doc. 35). The motion is ripe for resolution. For the reasons set forth below, the Court will grant the motion.

I.      **Statement of Undisputed Facts[1]**

Peay alleges that Defendants Watt and Ellenberger retaliated against him because he reported sexual abuse to the Pennsylvania State Police ("PSP").  (Doc. 36 ¶ 2). Specifically, Peay claims he reported the sexual abuse on July 9, 2024, and he received an alleged false misconduct on July 11, 2024, for possession of a dangerous or controlled substance and possession of contraband.  (*Id.*).

On April 13, 2024, Peay's cell was searched for suspected contraband.  (*Id.* ¶ 3). Defendants assert that, during the search, five pieces of paper were confiscated and tested for narcotics.  (*Id.*).  The electronic drug detection equipment ("EDDE") testing process detected K2 on the paper.  (*Id.* ¶ 4).  Peay maintains that there is no proof that anything was confiscated from his cell on April 13, 2024.  (Doc. 41 ¶¶ 3, 4).

In order to confirm the EDDE test results, the seized paper was sent to the Cumberland County Lab for formal testing.  (Doc. 36 ¶ 5).  On July 9, 2024, a report from the Cumberland County Forensics Lab confirmed that the pieces of paper tested positive for K2—a Schedule I substance.  (*Id.* ¶ 6).  On July 10, 2024, the Cumberland County Forensic Lab notified Defendant Watt of the lab test results.  (*Id.* ¶ 7).

---

[1]     Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1.  A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried.  *Id.*  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (Docs. 36, 41).

On July 11, 2024, Defendants Watt issued Peay Misconduct F226950 for possession of contraband. (*Id.* ¶ 8). The delay in the misconduct report was due to the investigative process—i.e., awaiting the lab results to confirm or deny whether the seized paper had K2 on it. (*Id.* ¶ 9). Peay asserts that Defendant Watt received the lab results on July 10, 2024, and waited 24 hours to write the misconduct. (Doc. 41 ¶¶ 5, 12).

Peay was issued Misconduct F226950 for possession of a dangerous or controlled substance and possession of contraband. (Doc. 36 ¶ 10).

On July 15, 2024, Hearing Examiner Ellenberger found Peay guilty of Misconduct F226950. (*Id.* ¶ 11). Defendant Ellenberger determined by a preponderance of evidence that Peay was in possession of a controlled substance based on the Cumberland County Lab results. (*Id.* ¶ 12). On July 15, 2024, Peay filed an appeal regarding Misconduct F226950. (*Id.* ¶ 25). In the appeal, Peay stated the "hearing examiner clearly disregarded policy and violated Plaintif[']s due process per the 14th amendment." (*Id.*). Peay's appeal was subsequently denied. (*Id.*).

Defendants maintain that Peay failed to file a grievance regarding the confiscated property and/or alleged retaliation. (*Id.* ¶ 13). Defendants assert that they reviewed all grievances that Peay filed between June 4, 2024, and September 24, 2024, to assess whether he filed a grievance about his confiscated property and/or alleged retaliation. (*Id.* ¶ 14). Defendants highlight those grievances as follows.

3

On June 13, 2024, Peay filed Grievance 1092964. (*Id.* ¶ 15). Grievance 1092964 dealt with Peay's mental health and his cell conditions after he reported that he wanted to harm himself. (*Id.*).

On June 17, 2024, Peay filed Grievance 1093286, wherein he accused DOC staff of sexual assault. (*Id.* ¶ 16).

On July 19, 2024, Peay filed Grievance 1097216, wherein he accused individuals, other than Defendants Watt and Ellenberger, of misplacing his clothes and various family photos. (*Id.* ¶ 17).

On July 25, 2024, Peay filed Grievance 1098070, complaining about being escorted through the prison in a smock and alleging that other inmates insulted him. (*Id.* ¶ 18).

On August 22, 2024, Peay filed Grievance 1104244. (*Id.* ¶ 19). This Grievance referenced the above-described sexual assault accusation and the lack of grief counseling following the alleged sexual assault. (*Id.*).

On August 27, 2024, Peay filed Grievance 1105034, regarding his housing. (*Id.* ¶ 20). In this Grievance, Peay requested to move facilities due to the above-referenced sexual assault. (*Id.*).

On September 5, 2024, Peay filed Grievance 1106501, alleging that he was not aware he was on sick call, and stating that he missed his appointment due to the lack of notification. (*Id.* ¶ 21).

4

Also on September 5, 2024, Peay filed Grievance 1106484, alleging that he was served rotten chicken and became ill. (*Id.* ¶ 22).

On September 24, 2024, Peay filed Grievance 1109768, wherein he complained about the ventilation system and the showers. (*Id.* ¶ 23).

Defendants assert that none of these grievances allege a First Amendment retaliation claim against Watt and Ellenberger. (*Id.* ¶ 24).

Peay asserts that his "retaliation claims are not based on confiscated property, [his] claims are based on a fabricated misconduct that was written in retaliation and DOC policy states you cannot grieve a misconduct." (Doc. 41 ¶ 6).

## II.    Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

5

Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe

it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.     Discussion

Defendants move for summary judgment on the following grounds: (1) Peay failed to properly exhaust his administrative remedies; and (2) Peay failed to establish a First Amendment retaliation claim.  (Doc. 37).

### A.     Exhaustion of Administrative Review[2]

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Stated differently, the exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding their prison conditions.  *See Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018); *see also Ross v. Blake*, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006))); *Jones v. Bock*, 549 U.S. 199, 211 (2007)

---

[2]     Because Defendants raised the issue of exhaustion of administrative remedies, the Court issued an Order notifying the parties that it would consider exhaustion in its role as factfinder in accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) and *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013), and afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (Doc. 44).

(stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted)); *Booth v. Churner*, 532 U.S. 731, 733-34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (alteration in original) (quoting *Woodford*, 548 U.S. at 88). "These procedural rules are supplied by the individual prisons." *Downey*, 968 F.3d at 305 (citations omitted); *see also Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim…is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances"); *Jones*, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim"); *Woodford*, 548 U.S. at 90 (indicating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). A prisoner's failure to follow a prison's procedural rules will result in a procedural default of their claims. *See Spruill*, 372 F.3d at 230-32 (concluding that PLRA's exhaustion requirement includes procedural default component); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010) (pointing out that *Spruill* held "that the PLRA includes a procedural default component

and the determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures").  A procedural default may be excused, however, if the prisoner can show that the administrative remedies were unavailable to them.  *See Rinaldi*, 904 F.3d at 266 ("The PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'" (quoting *Woodford*, 548 U.S. at 93)).  "Available means capable of use; at hand."  *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013) (internal citations and quotation marks omitted).  "An administrative remedy is unavailable when it 'operates as a simple dead end[,]…is so opaque that it becomes, practically speaking, incapable of use, or when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  *Downey*, 968 F.3d at 305 (alterations in original) (quoting *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019)).  "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry."  *Small*, 728 F.3d at 271.

### 1.    DC-ADM 804: Inmate Grievances

DC-ADM 804 describes the administrative remedies for inmate grievances.  DC-ADM 804 defines a "grievance" as "[a] formal written complaint by an inmate related to a problem encountered during the course of his/her confinement."  Commonwealth of Pa., Dep't of Corr., Inmate Grievance Sys., Policy No. DC-ADM 804 ("DC-ADM 804"), Glossary

9

of Terms, available at: https://www.pa.gov/content/dam/copapwp-

pagov/en/cor/documents/about-us/doc-policies/804%20Inmate%20Grievances.pdf.

DC-ADM 804 provides a three-step grievance process that must be completed to properly

exhaust administrative remedies in most cases. *Id.*; *see also Booth v. Churner*, 206 F.3d

289, 292 n.2 (3d Cir. 2002). If informal resolution attempts do not resolve the problem, the

first step is to file a written grievance (using form DC-804, Part 1) with the Facility Grievance

Coordinator within 15 working days after "the event upon which the claim is based." DC-

ADM 804 § 1(A)(3)-(5). An adverse decision by the Grievance Coordinator may be

appealed to the Facility Manager within 15 working days of the initial-review response or

rejection. Id. § 2(A)(1). Finally, the decision of the Facility Manager may be appealed to

"Final Review" with the Secretary's Office of Inmate Grievances and Appeals, and again

must be submitted within 15 working days of the date of the Facility Manager's decision. Id.

§ 2(B)(1).

DC-ADM 804 has specific requirements for grievances submitted by inmates. Those

requirements include, among other things, that the grievance "be legible [and]

understandable"; "include a statement of the facts relevant to the claim" as well as "the date,

approximate time, and location of the event(s) that gave rise to the grievance"; that the

prisoner "identify individuals directly involved in the event(s)"; and that the grievance include

"the specific relief sought," including "compensation or other legal relief normally available

from a court." *Id.* § 1(A)(11).

10

DC-ADM 804 lists three exceptions—issues that are not grievable under its provisions. Specifically, Section VI.H. provides that initial review of "issues concerning" DOC policy DC-ADM 801, i.e., inmate discipline, are not covered under DC-ADM 804. *Id.* § 1(A)(7). In other words, DC-ADM 804 explicitly states that "issues concerning" inmate discipline are not grievable under DC-ADM 804. *Id.*

### 2.    DC-ADM 801: Inmate Discipline

DC-ADM 801 covers inmate discipline. Commonwealth of Pa., Dep't of Corr., Inmate Discipline, Policy No. DC-ADM 801 ("DC-ADM 801"), available at: https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/801-inmate-discipline.pdf. Whereas a grievance is initiated by an inmate, inmate discipline is initiated by a member of the prison staff filing a written misconduct report. *Id.* § 1(B). While less serious offenses are subject to informal resolution, more-serious offenses are resolved through formal channels. *Id.* § 1(A)(1). This involves a misconduct hearing before a Hearing Examiner who determines whether the inmate is guilty of the alleged violation. *Id.* §§ 2, 4. Findings of not guilty are recorded in writing and require no rationale. *Id.* § 4(A)(3). Findings of guilty, however, require the preparation of a written summary of the hearing, which includes the facts the Hearing Examiner relied upon in reaching his or her decision. *Id.* § 4(A)(4).

DC-ADM 801 provides three levels of possible review. *Id.* § 4. After a finding of guilty, the inmate has 15 days to submit a written appeal to the Program Review Committee

11

("PRC"). *Id.* § 4(A)(4). There are only three valid bases for an appeal: (1) that the procedures employed were contrary to law or DOC directives or regulations; (2) that the punishment is disproportionate to the offense; or (3) that the findings of fact were insufficient to support the decision. *Id.* § 5(B)(1).

Inmates are not allowed to appeal findings of not guilty and if they pled guilty then they may appeal only on the first two grounds. *Id.* § 5(A)(2). After the PRC issues its decision, the inmate then has seven days to appeal to the Facility Manager. *Id.* § 5(B). Once the Facility Manager makes his or her decision, the inmate then has seven days to appeal to the DOC Chief Hearing Examiner's Office, Office of Chief Counsel, which provides the final level of review. *Id.* § 5(C).

### 3.    Discussion

The United States Court of Appeals for the Third Circuit has recognized that "the inmate grievance process [under DC-ADM 804] and the inmate discipline process [under DC-ADM 801] are two separate tracks, the mixing of which is specifically forbidden: 'A grievance directly related to a specific inmate misconduct charge…will not be addressed through the Inmate Grievance System and must be addressed through Department policy DC-ADM 801, "Inmate Discipline."'" *Howard v. Chatcavage*, 570 F. App'x 117, 119 (3d Cir. 2014) (quoting DC-ADM 804 and citing DOC Inmate Grievance System Procedures Manual at § 1.A.7). Conversely, where the grievable incident is not related to the disciplinary process, the procedure in DC-ADM 804 still governs. *Robinson v. Southers*, No. 13-1603,

12

2020 WL 9886298, at *8 (M.D. Pa. Apr. 2, 2020), *report and recommendation adopted as modified*, 2021 WL 2270677 (M.D. Pa. June 3, 2021) (applying *Howard* to hold that "an inmate may not take up a grievance through the appeals track for a misconduct citation").

Defendants argue that where an allegedly grievable incident directly relates to a disciplinary proceeding, DC-ADM 801 is the required procedure an inmate must follow to exhaust his institutional remedies. (Doc. 37 at 11-15). They assert that Peay failed to exhaust his administrative remedies under DC-ADM 801 because: (1) after Peay was found guilty of the misconduct charges, his appeal of Misconduct F226950 did not include a brief statement of the relevant facts or issues; (2) his appeal of Misconduct F226950 did not mention Defendant Watt; and (3) his appeal of Misconduct F226950 only alleged that Defendant Ellenberger violated his Fourteenth Amendment right to due process, and did not allege retaliation by either Watt or Ellenberger. (*Id.* at 12-13).

In reply, Peay asserts that his claims "are based on a fabricated misconduct that was written in retaliation and DOC policy states you cannot grieve a misconduct." (Doc. 41 ¶ 6).

The law in the Third Circuit is unsettled when it comes to exhaustion requirements for retaliation claims based on allegedly fabricated misconducts issued by state prison officials. *See Grisby v. McBeth*, 810 F. App'x 136, 138 n.1 (3d Cir. 2020) (nonprecedential) (noting that there is a "serious question" whether administrative remedies are available to exhaust prisoner retaliation claims based on adverse action of misconduct charge). This is primarily because under DC-ADM 804, prison officials will often reject grievances that

challenge or even mention misconducts and will instead direct prisoners to operate through DC-ADM 801 to challenge any misconduct-related issue. *See id.* at 139; DC-ADM § 804 § 1(A)(7).

However, as stated, an appeal through DC-ADM 801 is expressly limited by the relevant DOC forms to claiming that: (1) "the procedures employed were contrary to law, Department directives, or regulations"; (2) "the punishment is disproportionate to the offense"; or (3) "the findings of fact were insufficient to support the decision." DC-ADM 801 § 5(B)(1).

In the appeals of Misconduct F226950, Peay challenged the misconduct he received, claiming that he never received a Confiscated Items Receipt, that there is not a Confiscated Items Receipt in the misconduct, and he believes his Fourteenth Amendment due process rights were violated. (Doc. 36-16 at 7, 9). Although Peay did not specifically name Watt or Ellenberger in his appeals, he referenced them as the "Reporting Officer" and "Hearing Examiner." (*Id.*). It would be clear to prison officials that Correctional Officer Watt is listed as the Reporting Officer on the misconduct and that Hearing Officer Ellenberger authored the at-issue misconduct. (*See id.* at 4). The record further reflects that Peay pursued the DC-ADM 801 appeal process through final appeal. (Doc. 36-16). Accordingly, the Court cannot conclude as a matter of law that Peay failed to exhaust his retaliation claim against Watt and Ellenberger under DC-ADM 801.

Defendants alternatively argue that Peay failed to properly exhaust his claims using DC-ADM 804 by failing to file any grievances related to "retaliation and/or confiscation of property." (Doc. 37 at 13-14). In response, Peay clarifies that his "retaliation claims are not based on confiscated property." (Doc. 41 ¶ 6). Thus, DC-ADM 804 does not apply.

B.    First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal

15

proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense." *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Defendants argue that Peay cannot establish causation for his claims, and they additionally raise the "same decision" defense. (Doc. 37 at 7-10).

Defendants' first argument with respect to causation is that Peay cannot proffer any evidence that they had knowledge of Peay's protected First Amendment activity. (*Id.* at 5-8). There is no dispute that Peay's report to the PSP was protected conduct and that the issuance of a misconduct that resulted in discipline presents adverse action. The question is whether Peay can establish a causal link between his protected conduct and the misconduct issued by Defendant Watt and the finding of guilt by Defendant Ellenberger.

16

The Court finds that Peay has failed to proffer evidence of causation with respect to Defendants' actions.

Peay's report of abuse to the PSP does not indicate that he was complaining about Defendants Watt or Ellenberger or that he alleged that Defendants Watt or Ellenberger were involved in the underlying incident. (Doc. 14 ¶ 24). It is well-settled that causation cannot be inferred simply by asserting that a plaintiff pursued some protected activity (like a lawsuit, prison grievance, or report to the PSP) against a defendant or nonparty prison official who is not the alleged perpetrator of the retaliatory adverse action. *See, e.g.*, *Nunez v. Wetzel*, No. 1:21-cv-01484, 2023 WL 2385931, at *5 (M.D. Pa. Mar. 6, 2023) (collecting cases); *Kendrick v. Hann*, No. 1:19-cv-01642, 2021 WL 2914986, at *9 (M.D. Pa. July 12, 2021); *Victor v. Lawler*, No. 3:07-cv-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010); *Evans v. Rozum*, No. 07-cv-230J, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("[T]here is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others." (second alteration in original)); *Royster v. Beard*, No. 1:06-cv-0842, 2008 WL 2914516, at *6 (M.D. Pa. July 24, 2008) (concluding that plaintiff failed to satisfy the causal connection for his retaliation claim against defendant because previous grievance did not name or impact that defendant), *aff'd* 308 F. App'x 576 (3d Cir. 2009) (nonprecedential). Such general assertions fail to establish or even infer knowledge of the protected conduct, and they likewise fail to show why a defendant would take the adverse

17

action.  Peay has not presented any evidence of a causal connection between his protected conduct and Defendants Watt and Ellenberger.

Peay has thus failed to provide evidence to support his prima facie First Amendment retaliation case against Defendants.  Summary judgment, therefore, must be granted in their favor.

Assuming that Peay has proffered sufficient evidence to establish a prima facie retaliation case against Defendants Watt and Ellenberger, his claim still fails because his misconduct charges were upheld following a hearing and on appeal.  In other words, Defendants "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  *Watson*, 834 F.3d at 422 (quoting *Rauser*, 241 F.3d at 334).

After a disciplinary hearing, Defendant Ellenberger found Peay guilty of possession of a controlled substance and possession of contraband, and this finding was upheld through all levels of the misconduct appeal process.  (Docs. 14-3, 36-1, 36-5, 36-16).  Defendant Ellenberger based his decision on Peay's written statement, Defendant Watt's written report, and the Cumberland County Forensics Lab report confirming that the pieces of paper tested positive for a cannabimimetic agent (K2).  (Doc. 36-5 at 2).  Accordingly, Defendants have established, by presenting a "quantum of evidence," that the misconduct against Peay would have issued for a legitimate penological interest regardless of any purported retaliatory animus.  *See Williams v. Folino*, 664 F. App'x 144, 149 (3d Cir. 2016)

18

(nonprecedential) (citing *Watson*, 834 F.3d at 426); *see also Watson*, 834 F.3d at 425 (noting that "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence").  The Court finds that this is another reason why summary judgment must be granted in Defendants' favor on the First Amendment retaliation claim.

Peay has not presented any valid arguments as to why the misconduct report was allegedly fabricated.  He claims that the misconduct report did not contain a Confiscated Items Receipt and that Defendant Watt received the lab results on July 10, 2024 and waited 24 hours to write the misconduct.  (Doc. 41 ¶¶ 5, 12).  These arguments do not undercut the evidence presented at the hearing and relied upon by Defendant Ellenberger.[3]  Here, there is no genuine dispute of material fact as to whether the misconduct was falsified.

However, the Court notes that a misconduct does not have to be proven false to be actionable.  While the Court concludes here that Defendants have established that the misconduct against Peay would have issued for a legitimate penological interest notwithstanding retaliatory motive, the Court is not concluding that every finding of guilt at a misconduct hearing negates a retaliation claim.[4]

---

[3]    Under DC-ADM 801, a Hearing Examiner is required to make the relevant "decisions of credibility" during misconduct proceedings.  DC-ADM 801 § 3(A)(4).  Under that same policy, a Hearing Examiner is required to issue a finding of guilt if "a preponderance of evidence exists that the inmate committed the misconduct and issue a finding of guilt."  DC-ADM 801 § 4(A)(1).

[4]    A "legitimate prison disciplinary report[,]" or, in the case of a hearing examiner, convicting an inmate of a code violation, is, however, "probative and potent summary judgment evidence" that a defendant's action was not motivated by retaliatory animus.  *Watson v. Rozum*, 834 F.3d 417, 431 (3d Cir. 2002) (Ambro, J. concurring).

This Court extensively discussed a similar issue with the following analysis:

In *Smith* [*v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002),] the plaintiff alleged a due process violation, the Circuit Court stated that "prison disciplinary proceedings may…constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right." 293 F.3d at 653. *Smith* went on to state, "[w]e have previously held that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment guarantee of access to the courts." *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981)). *Smith* **did not** say that a misconduct report could not be an adverse action unless it is falsified…

*Murray v. McCoy*, No. 1:21-cv-320, 2026 WL 923621, *12 (M.D. Pa. April 6, 2026) (emphasis in original) (footnote omitted). Thus, a legitimate misconduct is not an absolute bar to a retaliation claim.

Additionally, in *Murray v. Smithbower*, No. 21-2156, 2023 WL 5378839, at *3 (3d Cir. Aug. 22, 2023), the Third Circuit affirmed the grant of summary judgment on an inmate's retaliation claim related to a misconduct where, based on corroborative evidence, the hearing examiner credited the prison officer's claim that the inmate had threatened him. The Third Circuit reasoned as follows:

Sergeant Smithbower, however, had legitimate reasons to issue the misconduct. The undisputed evidence shows that Murray did disobey an order: he acknowledges that he was told to return to his cell and instead left to retrieve his Scrabble board. *See* ECF No. 99-2 at 53. Similarly, as to the offense for possession of unauthorized items, Murray admitted that some of the confiscated property was considered contraband. *Id.* at 61-63. Moreover, unlike the prisoner in *Watson*, Murray has not presented evidence that showed other inmates were not sanctioned for similar items or otherwise undermined the officers' stated reasons. *Cf. Watson*, 834 F.3d at 426. And, as to the offense for threatening an employee with bodily harm, based on a

20

video of the incident and Sergeant Smithbower's written report documenting his version of events, *see* ECF No. 92-4 at 2, the Hearing Examiner credited the prison officials' claim that Murray had threatened them as the incident escalated. *Id.* at 8. On this record, there is no genuine issue of material fact that Sergeant Smithbower's issuance of the misconduct was reasonably related to legitimate penological interests and that Murray would have been disciplined regardless of his grievance-filing activities. S*ee Watson*, 834 F.3d at 426.

Turning to the retaliation claim against Hearing Examiner Ellenberger, summary judgment in his favor was proper, too. In adjudicating the misconduct, Hearing Examiner Ellenberger reviewed the video footage of the incident at Murray's request; considered Murray's written report setting forth his account of the incident; and considered Sergeant Smithbower's account of the March 2 events. Hearing Examiner Ellenberger credited Sergeant Smithbower's version over Murray's; determined that the video footage corroborated the prison official's account; and found Murray guilty of the offenses set forth in the misconduct. *See* ECF No. 92-4 at 8. No reasonable juror could conclude that Hearing Examiner Ellenberger's misconduct ruling was based on anything other than Murray's violation of prison regulations. *See Carter*, 292 F.3d at 159.

*Murray*, 2023 WL 5378839, at *3.

Similarly, no reasonable jury would be able to conclude that either the issuance of the misconduct or the misconduct ruling were the result of anything other than Peay's misconduct. The misconduct report, authored by Defendant Watt, details how Peay's cell was searched after he exhibited signs of possible drug use, and that the search team found five pieces of paper that tested positive for K2. (Doc. 36-1 at 3). Defendant Ellenberger, after reviewing Defendant Watt's written report, Peay's statement, and the results of the Lab drug test, found that a preponderance of the evidence supported a finding of guilt. (*Id.* at 2; Doc. 36-5). As stated, the misconduct determination was upheld at all levels of appeal.

21

(Doc. 36-16).  The Court concludes that there is no genuine dispute that the misconduct and discipline would have been imposed regardless of Peay's protected conduct.

## IV.    Conclusion

Based on the foregoing, the Court will grant the Rule 56 motion by Defendants Watt and Ellenberger and enter judgment in their favor.  (Doc. 35).  A separate Order shall issue.


Robert D. Mariani
United States District Judge

Dated: May _____, 2026